UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEAH BLACK,<br><br>Plaintiff,<br><br>v.<br><br>EASTPOINTE COMMUNITY SCHOOLS and CHRISTINA GIBSON,<br><br>Defendants. | Case No. 24-cv-10032<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

I. Introduction

Leah Black commenced this employment discrimination and hostile-work-environment action against Eastpointe Community Schools and its superintendent, Christina Gibson (the "ECS Defendants" collectively). The complaint alleges, among other things, that the ECS Defendants denied promoting Black because of her race.

Before the Court is the ECS Defendants' motion for summary judgment and Black's cross-motion for the same relief. (ECF Nos. 32-33). The parties filed their associated responses and replies. (ECF Nos. 36, 39-40). The Court will decide the

motions without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, (1) the ECS Defendants' motion is granted, and (2) Black's cross-motion is denied.

II. Background

Black is an African-American woman. (ECF No. 1, PageID.4, ¶ 8; ECF No. 32-2, PageID.485, Tr. 121:12-14). She started working for ECS as a middle school secretary in the 2016-17 academic year. (ECF No. 32-3, PageID.582, ¶ 4). In August 2017, a staffing agency hired Black to work for ECS as a curriculum and grants specialist. (*Id.*, ¶ 7). The staffing agency employed Black and paid her a salary. (*Id.*, PageID.582-83, ¶ 8; ECF No. 32-5, PageID.596-98). Black's employment agreements designated ECS as her work location.[1] (ECF No. 32-5, PageID.596-98).

Black applied for several other positions with ECS during her tenure, from August/September 2017 through August 2019. (ECF No. 1, PageID.4-5, ¶¶ 11-17; ECF No. 32-2, PageID.424-25, 431-32, 440, Tr. 60:19-61:1, Tr. 67:24-68:1, Tr. 76:9-14; ECF No. 50-1, PageID.2432-37). But the school district awarded those jobs to white candidates each time, citing Black's professional inexperience. (ECF No. 32-3, PageID.586-89, ¶¶ 31-36, 40-49). She eventually resigned as a grants specialist

[1] The ECS Defendants do not argue that they are exempt from Michigan's Elliott-Larsen Civil Rights Act because only the staffing agency "affected or controlled a term, condition, or privilege of [Black's] employment." *McClements v. Ford Motor Co.*, 473 Mich. 373, 389 (2005); *see also City of Wayne v. Miller*, 351 Mich. App. 538, 549 (2024).

on April 15, 2021. (ECF No. 32-3, PageID.585, ¶ 19; ECF No. 32-7, PageID.623). Black worked her last day on April 21. (ECF No. 32-3, PageID.585, ¶ 19).

After her resignation, ECS paid its own workers, as well as the staffing agency's employees, a five percent "[e]nd of year one-time" bonus. (*Id.*, PageID.584-85, ¶¶ 17, 20; ECF No. 32-17, PageID.656). The school district received the money to pay the bonuses from COVID-19 relief funds. (ECF No. 32-3, PageID.583-84, ¶¶ 9-17). ECS claims that it did not pay Black the year-end bonus because she was not employed with the staffing agency at the end of the 2020-2021 academic year. (*Id.*, PageID.585, ¶ 20). Black counters that ECS did not pay her the bonus on account of her race. (ECF No. 1, PageID.10, 12, ¶¶ 39, 46).

*B. Procedural History*

Black filed this lawsuit against the ECS Defendants, alleging racial discrimination in violation of 42 U.S.C. § 1981. (ECF No. 1, PageID.7-9, ¶¶ 23-31). The complaint also asserts racial discrimination, retaliation, hostile work environment, and constructive discharge claims in violation of 42 U.S.C. § 1983 and the Elliot-Larsen Civil Rights Act ("ELCRA"). (*Id.*, PageID.9-15, ¶¶ 32-57). Spanning all these claims, Black challenges two adverse employment actions: (1) the failure to promote her; and (2) the failure to pay her a 2021 year-end COVID relief bonus. The parties now cross-move for summary judgment. (ECF Nos. 32-33).

## III. Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Analysis

### *A. 42 U.S.C. § 1981 (Count I)*

Section 1981 forbids racial discrimination in the making and enforcement of contracts. It also authorizes "a cause of action for racial harassment in the work place against *private* employers." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021) (emphasis added). But claims asserted against public entities or individual state actors implicate a different statute.

"Whether the violation of §1981 is committed by a municipality through its policies or custom" (as Black alleges against ECS) or "individuals acting under the color of state law" (as Black alleges against Gibson) "[42 U.S.C.] §1983 contains an express clause permitting an aggrieved person to sue the state actor for money damages." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012). And "[s]ection 1983's express clause permitting these suits obviates the need to imply the same right under the general provisions of § 1981." *Id.*

That means section 1983 "is the exclusive mechanism to vindicate violations of § 1981" by either municipal agencies or individual state actors in their official or individual capacities. *Id.*; *see also id.* at 660 ("we conclude that § 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity."); *Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008) (same for "state governmental units"); *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (same for official capacity claims).

Because section 1983 provides the only avenue of relief under these circumstances, the section 1981 claim must be dismissed as an independent cause of action.[2]

*B. Denial-of-Promotion Claims – Statute of Limitations*

Although Black may not proceed with the standalone section 1981 claim, she "may still bring § 1983 claims premised on violations of § 1981." *Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019). Section 1983 creates a private cause of action

[2] Insofar as Black seeks "equitable and injunctive relief" under section 1981, those portions of the claim must still be brought through section 1983 exclusively. (ECF No. 1, PageID.9). *See McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 U.S. App. LEXIS 19212, at *6 (6th Cir. Aug. 8, 2000) ("Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of actions seeking equitable relief against state actors alleging violation of their rights under § 1981."); *see also Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *McCrary* with approval). At any rate, Black's "§ 1981 claim is not saved because [she] request[s] injunctive relief. The remedy for past discrimination, which is all that [she] plead[s], is monetary damages." *Direct Constr. Servs., LLC v. City of Detroit*, 820 F. App'x 417, 428 (6th Cir. 2020).

against state actors who violate the federal constitution or federal statutes, like section 1981.

Section 1983 claims arising in Michigan have a three-year limitations period. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020); *see also* Mich. Comp. Laws § 600.5805(2). The statute of limitations "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Garza*, 972 F.3d at 867 n.8 (quotation omitted).

ELCRA's statute of limitations is also three years. *Garg v. Macomb Co. Comm. Mental Health*, 472 Mich. 263, 284-285 (2005); *see also* Mich. Comp. Laws § 600.5805(2). "[A]ccrual under the three-year statute of limitations is measured by the time the wrong upon which the claim is based was done regardless of the time when damage results." *Joliet v. Pitoniak*, 475 Mich. 30, 36 (2006) (quotation omitted). In an ELCRA case, the plaintiff must "commence an action within three years of each adverse employment act by a defendant." *Garg*, 472 Mich. at 282.

While the ECS Defendants did not invoke the statute of limitations as a reason to dismiss the promotion-based section 1983 and ELCRA claims, the Court may address their timeliness *sua sponte*. Three factors support this approach.

*First*, the face of the complaint indicates that the denial-of-promotion claims are untimely. (ECF No. 1, PageID.4, ¶ 11). *Second*, the ECS Defendants raised the statute of limitations as an affirmative defense when they asserted in their answer

that "[p]laintiff has failed to state a claim in whole or in part upon which relief may be granted." (ECF No. ECF No. 5, PageID.31, ¶ 1). *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"); *see also Buck v. City of Highland Park*, 733 F. App'x 248, 252 n.3 (6th Cir. 2018) (same). And *third*, the Court afforded the parties an adequate opportunity to address the timeliness of the denial-of-promotion claims when it directed them to file supplemental briefs on this question. (ECF No. 48). *Cf. Pierce v. County of Oakland*, 652 F.2d 671, 672 (6th Cir. 1981) (per curiam) (affirming the district court's dismissal of an employment discrimination case on timeliness grounds, where the defendant initially raised the statute of limitations on the first day of trial, because the defense was apparent from the face of the complaint).

Since the Court may decide the statute of limitations issue *sua sponte*, it concludes that the denial-of-promotion claims are untimely. Black applied for four jobs with ECS: human resource specialist in August/September 2017 (ECF No. 32-2, PageID.440, Tr. 76:9-14); grants coordinator in July 2018 (ECF No. 32-3, PageID.586-87, ¶¶ 31-33); administrative assistant to the superintendent in July 2019 (ECF No. 32-2, PageID.424-25, Tr. 60:19-61:1); and athletic director in August 2019 (*id.*, PageID.431-32, Tr. 67:24-68:1; ECF No. 50-1, PageID.2432-37). ECS rejected her candidacy each time. (ECF No. 32-3, PageID.586-89, ¶¶ 31-36, 40-49).

But although the record is unclear about when ECS informed Black about its adverse decisions, one thing is certain: she learned of the denials sometime before January 5, 2021 – more than three years before she filed the complaint in this case. So the promotion-based section 1983 and ELCRA claims are time-barred. *See Martínez-Rivera v. Puerto Rico*, 812 F.3d 69, 75 (1st Cir. 2016) (holding that the statute of limitations in a section 1983 employment action begins to run when the employer's adverse decision is made and communicated to the employee); *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008) (holding that the "claim accrues upon awareness of the actual injury, *i.e.*, the adverse employment action"); *cf. Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (Title VII discrimination claim accrued "when Oberlin informed [the plaintiff] that he would not be hired for its vacant statistics position."); *see also Gardner v. Mich. State Univ.*, No. 363334, 2024 Mich. App. LEXIS 4396, at *17 (Mich. Ct. App. Jun. 6, 2024) (holding that an ELCRA discrimination claim accrued when the plaintiff "was denied the position" he applied for, *i.e.*, the alleged adverse employment action).

Black disagrees with this analysis. She argues that the continuing-violations doctrine salvages the relevant portions of the section 1983 claim.[3] (ECF No. 49,

---

[3] Black acknowledges that the Michigan Supreme Court abrogated the continuing-wrongs doctrine in *Garg v. Macomb County Cmty. Mental Health Servs.*, 472 Mich.

PageID.2402-05). The continuing-violations doctrine comes in two varieties. *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1034 (6th Cir. 2025) (quotation omitted). The first category comprises three elements: (1) "wrongful conduct that continue[d] after the precipitating event that began the pattern"; (2) "injury to the plaintiff that continue[d] to accrue after that event"; and (3) "such further injury . . . hav[ing] been avoidable if the defendants had at any time ceased their wrongful conduct." *Id.* at 1035 (quotation omitted). The second category occurs "when the defendant has committed several distinct acts of wrongdoing, and the cumulative effect of these acts amounted to a constitutional violation." *Id.* (quotation omitted).

Black's promotion-based section 1983 claim fits the second category most appropriately because it involves "several distinct acts of wrongdoing", *i.e.*, ECS's discriminatory rejection of her application for each, separate job opening. But these "separate acts of wrongdoing" are also "individually actionable." *Id.* (quotation omitted); *see also Martínez-Rivera*, 812 F.3d at 75; *Lukovsky*, 535 F.3d at 1049; *Amini*, 259 F.3d at 500. And the continuing-violations doctrine is unavailable where "the defendant's separate acts of wrongdoing are individually actionable." *Brown*,

263 (2005). (ECF No. 49, PageID.2404-05). Therefore, the promotion-based ELCRA discrimination claim cannot benefit from the continuing-wrongs doctrine.

135 F.4th at 1035 (quotation omitted). So, contrary to Black's view, the promotion-based section 1983 claim would remain time-barred anyway.

Because Black failed to commence her promotion-based causes of action within three years after each instance where ECS rejected her job application, the corresponding portions of the section 1983 and ELCRA claims must be dismissed as untimely.

C. *Denial-of-Promotion Claims – The Merits*

Placing aside their untimeliness, though, the promotion-based section 1983 and ELCRA claims still lack merit.

Racial discrimination – whether pursued under section 1983 or ELCRA – may be established in two ways; either through (1) direct evidence, or (2) indirect evidence using the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (stating that Title VII and ELCRA discrimination claims are analyzed under *McDonnell Douglas*); *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) ("this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983.").

The *McDonnell Douglas* test requires that the plaintiff first establish a *prima facie* case of discrimination. That burden is met if the plaintiff (1) belongs to a

protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07 (6th Cir. 2019).

Once the plaintiff demonstrates a *prima facie* case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 607. If the defendant meets this burden, "the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination." *Id.*

Pretext exists where the plaintiff can show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* at 612.

Black points to no evidence suggesting that ECS rejected her job applications for any reason other than she was comparatively less qualified than the candidates hired to fill those positions. (ECF No. 32-3, PageID.586-89, ¶¶ 31-43, 49). The closest she comes to presenting any evidence of pretext is ECS's rejection of her application for the human resource specialist position. But even there, Black conceded at her deposition that she had no official training in human resources (ECF No. 32-2, PageID.423-24, Tr. 59:15-60:2); her resume and "professional summary"

reflect almost no human resources experience (ECF No. 33-2, PageID.698-701); and her main corroborating witness – former ECS human resource specialist Diane Haack – admitted that she did not know whether race played any role in ECS's decision not to hire Black for the position.[4] (ECF No. 38-2, PageID.1757, Tr. 10:16-22).

Since nothing in the record shows that ECS declined to promote Black for pretextual reasons, the associated section 1983 and ELCRA claims cannot withstand summary judgment even if they are timely.

*D. ELCRA – Bonus-Based Retaliation Claim*

Turning to the bonus-based ELCRA retaliation claim, the statute prohibits employers from "[r]etaliat[ing] or discriminat[ing] against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a). ELCRA retaliation claims are meant to "protect access to the machinery available to seek redress for

[4] Haack's declaration is also factually inaccurate. Haack – who is white – *did not* apply for the human resource specialist position "one month" after Black had applied for the same position. (ECF No. 38-5, PageID.1845, ¶ 6). Black applied for the job in August/September 2017. (ECF No. 1, PageID.4, ¶ 11; ECF No. 32-2, PageID.440, Tr. 76:9-14; ECF No. 32-3, PageID.588, ¶ 40). Haack applied for the position in January 2021 – nearly three and a half years later. (ECF No. 38-2, PageID.1776, Tr. 29:18-20; *see also* ECF No. 38-5, PageID.1847) ("Since February 2021, I have worked in the Human Resources (HR) department").

civil rights violations and to protect operation of that machinery once it has been engaged." *DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich. App. 432, 440 (1997).

A *prima facie* ELCRA retaliation claim requires evidence that (1) the plaintiff engaged in a protected activity, (2) the defendant knew about the protected activity, (3) the defendant took an employment action adverse to the plaintiff, and (4) a causal connection exists between the protected activity and the adverse employment action. *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019) (cleaned up).

The bonus-based ELCRA retaliation claim falters at the second and fourth prongs. Even assuming Black engaged in some form of protected activity when she had informal conversations with an ECS human resource specialist sometime in October 2019, she fails to adduce any evidence that the ECS Defendants knew about those conversations or that they led ECS to deny her a 2021 year-end COVID relief bonus almost *two years* later. (ECF No. 32-2, PageID.405-09, Tr. 41:20-45:12). And without this showing, the bonus-based ELCRA retaliation claim cannot succeed.[5]

---

[5] The complaint's bonus-based retaliation allegations are limited to the ELCRA claim. (ECF No. 1, PageID.13-14, ¶¶ 50-54). They do not appear in the allegations corresponding to the section 1983 claim. At any rate, the Sixth Circuit Court of Appeals analyzes section 1983 employment retaliation claims using the same burden-shifting analysis applicable to Title VII retaliation claims. *See Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 168-69 (6th Cir. 2004); *Beya v. Hoxworth Blood Ctr.*, No. 97-4028, 1999 U.S. App. LEXIS 3478, at *14 (6th Cir. Mar. 3, 1999) ("To analyze a claim under 42 U.S.C. § 1983, courts apply the same burden-shifting analysis applicable in Title VII retaliation claims.").

A *prima facie* Title VII retaliation case requires proof that (1) the plaintiff engaged in activity protected by Title VII, (2) the defendant knew about the protected

*D. Bonus-Related Hostile-Work-Environment, Constructive Discharge, and Discrimination Claims*

Lastly, Black maintains that the ECS Defendants violated section 1983 and ELCRA when the school district paid 2021 year-end COVID relief bonuses to white employees but not similarly situated African-American employees like herself. (ECF No. 1, PageID.6, 8, 10, 12, ¶¶ 19-21, 27-28, 39-40, 46; ECF No. 32-2, PageID.499-502, Tr. 135:19-136:1, Tr. 137:24-138:9). Insomuch as she asserts that the ECS Defendants created a hostile work environment through this conduct, Black's claim fails as a matter of law. (ECF No. 1, PageID.10, ¶ 39).

Section 1983 and Title VII hostile-work-environment claims require a *prima facie* showing that "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013); *see also Boutros v. Canton Regional Transit Auth.*, 997 F.2d 198, 202 (6th Cir. 1993) ("This Circuit has held that the required elements of prima facie proof necessary for a plaintiff charging a racially hostile work environment under both Title VII and 42 U.S.C. § 1983 are

---

activity, (3) the defendant took a materially adverse employment action against the plaintiff, and (4) a causal connection exists between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Because Black fails to demonstrate that (1) the ECS Defendants knew about her October 2019 conversations with the human resource specialist, or (2) the conversations led ECS to deny her a 2021 year-end COVID relief bonus, Black could not either prevail on a section 1983 employment retaliation theory.

the same."). ELCRA similarly requires the plaintiff to demonstrate that "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Major v. Village of Newberry*, 316 Mich. App. 527, 550 (2016) (quotation marks omitted).

Here, the record shows that Black had already resigned from the school district before ECS failed to pay her a 2021 year-end COVID relief bonus. So she cannot satisfy this element of her *prima facie* case under section 1983 or ELCRA. *See, e.g., Pueschel v. Peters*, 577 F.3d 558, 565-66 (4th Cir. 2009) (rejecting Title VII hostile-work-environment claim "because the abusive work environment . . . did not exist until three years after she left the workplace."); *Dai Hoang v. Wilkie*, No. 18-01755, 2019 U.S. Dist. LEXIS 177966, at *29 (D. Colo. Aug. 21, 2019) (dismissing Title VII hostile-work-environment claim because the "Plaintiff had already resigned from her employment with the Denver VA and was employed elsewhere" when the harassment occurred); *Reid v. Aransas County*, 805 F. Supp. 2d 322, 335 (S.D. Tex. 2011) ("Plaintiff cannot use events that happened after his termination to support his hostile work environment claim."); *Nichols v. Grand Trunk Western R.R.*, No. 204901, 1999 Mich. App. LEXIS 2218, at *13 n.3 (Mich. Ct. App. Dec. 21, 1999) (White, J., concurring) ("Plaintiffs cite no authority to support the proposition that they could support their racial harassment claims with

incidents occurring when plaintiffs were no longer in the workplace and the terms or conditions of their employment were not affected thereby.”).

The bonus-related allegations cannot supply the basis for a constructive discharge claim under section 1983 and ELCRA for this same reason. Since Black already resigned from the school district, the failure to pay her the year-end bonus could not possibly qualify as conduct “so severe that a reasonable person in the employee’s place would feel compelled to resign.”[6] *Champion v. Nation Wide Security, Inc.*, 450 Mich. 702, 710 (1996) (ELCRA standard); *see also Laster*, 746 F.3d at 727 (stating that a Title VII constructive discharge “occurs when the employer, rather than acting directly, deliberately makes an employee’s *working conditions* so intolerable that the employee is forced into an involuntary *resignation*.”) (quotation omitted) (emphasis added).

Other aspects of the record undermine the bonus-related claims as well (whether founded upon a hostile-work-environment, constructive discharge, or

---

[6] To the extent Black asserts that that the ECS Defendants discriminated against her when the school district failed to pay her a 2021 year-end COVID relief bonus, her former employee status does not scuttle her claim. *See Gerner v. County of Chesterfield*, 674 F.3d 264, 268-69 (4th Cir. 2012) (holding that an alleged discriminatory severance package could constitute an adverse employment action even though the employer offered the package after it had already terminated the plaintiff); *see also Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984) (stating that, for Title VII discrimination purposes, “[a] benefit need not accrue before a person’s employment is completed to be a term, condition, or privilege of that employment relationship.”).

discrimination-based theory). Gibson attested that Black did not receive a COVID relief bonus because she had resigned from her position before the conclusion of the 2020-21 academic year on June 30, 2021. (ECF No. 32-3, PageID.584-85, ¶¶ 17, 20; *see also* ECF No. 33-6, PageID.726, Tr. 10:5-10). Diane Haack, ECS's human resource specialist responsible for processing the bonus payments, also acknowledged that ECS workers had to remain on staff at year's end to receive the bonus payments. (ECF No. 36-3, PageID.1345, Tr. 53:12-16). And ECS's payment logs reflect that two other African-American workers, who remained on staff as of June 30, 2021, did receive COVID relief bonuses at the conclusion of the 2020-21 academic year. (ECF No. 32-17, PageID.656; *see also* ECF No. 32-3, PageID.585, ¶¶ 21-22; ECF No. 32-2, PageID.498-99, 507, Tr. 134:17-18, Tr. 135:13-18, Tr. 143:19-21).

Black refutes none of this evidence. At most, she contends that ECS adopted the year-end employment requirement "[i]n later years" "but not for the year" in which she "was entitled to her bonus." (ECF No. 36, PageID.1269). Granted, subsequent ECS bonus policies did incorporate the year-end requirement more openly. (ECF No. 32-18, PageID.658-59; ECF No. 32-20, PageID.664). But the 2020-2021 bonus policy does not contradict Gibson's and Haack's testimony that ECS workers had to remain on staff to receive the year-end bonus payments. In fact, the policy describes the COVID relief bonuses as an *"[e]nd of year one-time* hazard

pay bonus payment," which is entirely consistent with Gibson's and Haack's testimony. (ECF No. 32-17, PageID.656) (emphasis added).

Viewing the record in her favor, no reasonable jury could decide that ECS withheld the bonus from Black because of her race. As a result, the ECS Defendants are entitled to summary judgment on the bonus-related hostile-work-environment, constructive discharge, and discrimination claims asserted under section 1983 and ELCRA. Accordingly,

IT IS ORDERED that the ECS Defendants' motion for summary judgment (ECF No. 32) is granted.

IT IS FURTHER ORDERED that Black's cross-motion for summary judgment (ECF No. 33) is denied.

IT IS FURTHER ORDERED that Black's emergency motion to supplement the exhibits attached to her cross-motion for summary judgment (ECF No. 34) is granted.

IT IS FURTHER ORDERED that Black's emergency motion to take Diane Haack's deposition (ECF No. 38) is granted in part and denied in part insofar as the

Court considered Haack's April 16, 2025 deposition testimony (ECF Nos. 36-3, 38-2) to decide the parties' summary judgment motions.

IT IS FURTHER ORDERED that the ECS Defendants' motion to strike Diane Haack's declaration (ECF No. 41) is denied.

Dated: September 16, 2026

s/ Robert J. White
Robert J. White
United States District Judge